*236
 
 Daniel, J.
 

 First,
 
 the
 
 lime,
 
 when the plaintiff was to k-ave 280 logs of timber at Plymouth, was not stated in the contract; the law, therefore, required him to have them tjlere at a reasonakie time. The entire number of logs were there, and staked on the 7th day of July, 1842. Four days thereafter, the defendant despatched a vessel for that place for the timber; he therefore never pretended to repudiate the contract, on the ground that the plaintiff had not sent the logs at a reasonable time; nor, as we think, had he a right to have done so on that ground.
 
 Secondly;
 
 the defendant contends, that the second raft of logs was staked in the river at Plymouth, at a place which had not been designated by Maitland, and that he was not liable to pay for any of the logs, until the whole had been staked in the river at that place, which Maitland should designate, agreeably to the terms of the contract. It appears from the case, that, on the arrival of the first raft, Maitland (who was agent for that purpose) did designate the place in the river, where the logs were to be staked and fastened; he gave no notice at that time of any other place where he wished any of the logs to be staked. He did not designate several places for the different parcels, but designated
 
 the
 
 place where all the logs were to be staked, and at that place the plaintiff delivered and staked them: and in so doing acted rightly.
 
 Thirdly: It is
 
 said that the notice on the 3d day of July, given to the defendant’s agent at Edenton that the entire number of logs would be at Plymouth on the 7th of the same month, was coupled with a condition,- to wit, “if the weather was favourable,” and that this condition rendered the said notice a nullity, and also, it is said, that the second notice, which came through the hands of Maitland, dated the 5th and reeeived on the 7th day of July 1842, was too indefinite, as it only stated that the residue of the entire number of the logs specified in the contract would be started to Plymouth “in a day or two,” and that the defendant’s agent at Edenton was in consequence thereof left in doubt, even up to the 11th day of July whether jhe whole of the logs were at Plymouth or not. The answer
 
 *237
 
 to these arguments, we think, is, that there was no evidence offered that the weather, in the intermediate time, was unfa-vourable for rafting the timber ; and that the Edenton agent had not a reasonable ground to doubt, that the entire lot of timber, would be at Plymouth on the 7th of July. We know no authority, compelling the plaintiff first to stake and then give notice to the defendant. But even if the notices to Thompson were liable to the objection taken, we think they would be removed by the conduct of the defendant’s agent. He did not decline acting on the notices, nor find fault in any manner with them. On the contraiy, he treated them as proper, and proceeded as if the property in the timber had vested in the defendant by the staking it in the river at Plymouth, so as not to be carried off by the ordinary current. For, on the 11th July, he actually sent for the timber; and, at the same time, he wrote to the plaintiff that he had done so, and had sent the money for it, to be paid to the plaintiff’, if in Plymouth, or, if not, to- be left with Mr. Maitland for him,
 
 provided the timber was at Plymouth, as he hoped it was. .
 
 Thus, the only thing the party then required was, that the timber should have been brought to Plymouth and there made fast. No further notice was required; no further act on the part of the plaintiff was deemed necessary. Mr. Thompson considered himself authorised at once to take the timber, if he found it in the river upon the arrival of the vessel. The plaintiff, then, had left the logs for the defendant and to be taken by him at his will, and the defendant’s agent deemed himself entitled to take, and he said he meant to take,. the logs without further delivery or direction from the plaintiff. Payment was not'necessary to complete the right: for the money was not to be due, until demand after staking the timber in the river. The parties, therefore, obviously deemed the contract on the part of the plaintiff executed by the staking of the logs in the river, and the defendant’s agent sent for them as being his property, there, and they were so found. The defendant’s vessel had arrived in the port of Plymouth to take away the timber on
 
 *238
 
 the morning of the 12th July; the timber all marked and measured was then ready to be put aboard; a storm arose that day, and, by 3 o’clock, the timber was lost in
 
 conse
 
 qUence 0£ storm. It is a hard case, but we think that the loss must fall on the defendant, as he was then the owner of the property.
 

 Per Curiam, Judgment affirmed.